**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **XPEL, INC.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE DETAIL RX, LTD. d/b/a THE DETAIL DOCTOR; ARLIA AUTO GROUP LLC; and GREGORY ARLIA,**<br><br>**Defendants.** | **Civil Action No.**<br><br>**JURY DEMANDED** |

## PLAINTIFF XPEL, INC.'S COMPLAINT

Plaintiff XPEL, Inc. ("**Plaintiff**" or "**XPEL**") files this Complaint against The Detail RX, LTD. d/b/a The Detail Doctor ("**Detail Doctor**"), Arlia Auto Group LLC ("**Arlia Auto Group**"), and Gregory Arlia ("**Arlia**") (collectively, "**Defendants**") and alleges the following:

## NATURE OF THE ACTION

1. This is a lawsuit by XPEL for: (i) Deceptive Trade Practices in violation of New York General Business Law § 349; (ii) False Advertising in violation of New York General Business Law § 350; (iii) false advertising, passing off, and unfair competition under 15 U.S.C. § 1125(a); (iv) Defamation; (v) Unfair Competition under the common law of the State of New York; (vi) Unjust Enrichment under the common law of the State of New York; (vi) trademark infringement arising under 15 U.S.C. § 1114(1), including willful infringement; and (viii) common law trademark infringement under the common law of the State of New York. As set forth in greater detail below, Defendants have posted disparaging videos about XPEL and XPEL's products under the guise of independent "Paint Protection Film Reviews," without disclosing to the public that these influencer videos were prepared pursuant to paid sponsorships, and Defendants has continued to use XPEL's trademarks to trade on XPEL's good will.

## PARTIES

2. Plaintiff XPEL, Inc. is a Nevada corporation having its principal place of business located at 711 Broadway Street, Suite 320, San Antonio, Texas 78215.

3. Upon information and belief, Defendant The Detail RX, LTD. d/b/a The Detail Doctor is a New York business corporation having a registered address at 223 Benjamin Blvd, Yorktown Heights, NY 10598 and having its principal place of business at 121 Stillwater Road, Mahopac, NY.

4. Upon information and belief, Defendant Arlia Auto Group LLC is a New York limited liability company having its principal place of business at 121 Stillwater Road, Mahopac, NY.

5. Upon information and belief, Defendant Gregory Arlia is an individual residing at 223 Benjamin Blvd, Yorktown Heights, NY 10598-3846.

## JURISDICTION AND VENUE

6. This is a complaint for causes of action under the Lanham Act, 15 U.S.C. §§ 1114, 1125, *et seq*., New York statutory law, and the common law of New York. This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

7. This Court has personal jurisdiction over Defendant Arlia because he resides and has committed the acts complained of herein within this judicial district.

8. Defendant Arlia Auto Group has submitted to personal jurisdiction in this judicial district because, inter alia, it is a New York limited liability company and has therefore availed itself of the rights and benefits of the laws of the State of New York. In addition, personal jurisdiction is proper in this district because Defendant Arlia Auto Group is transacting and doing business within this judicial district and is committing the acts complained of herein within this

judicial district, and harm to XPEL occurred in this district.

9. Defendant Detail Doctor has submitted to personal jurisdiction in this judicial district because, inter alia, it is a New York limited liability company and has therefore availed itself of the rights and benefits of the laws of the State of New York. In addition, personal jurisdiction is proper in this district because Defendant Detail Doctor is transacting and doing business within this judicial district and is committing the acts complained of herein within this judicial district, and harm to XPEL occurred in this district.

10. Venue is proper in this district under 28 U.S.C. §1391(b) and (c) because, upon information and belief, Defendants reside in this judicial district, Defendants conduct business in this judicial district, and/or a substantial part of the events or omissions giving rise to the claims occurred here in this judicial district, and harm to XPEL occurred in this district. Alternatively, this Court has personal jurisdiction over Defendants.

## **FACTS AND BACKGROUND**

11. XPEL is a manufacturer, distributor and retailer of after-market automotive products including, but not limited to, automotive paint protection films ("**PPF**") and headlight protection products, as well as window film products. PPF is a transparent or colored thermoplastic urethane layer applied to a vehicle's painted surfaces. It acts as a physical shield against rock chips, scratches, bug splatters, and UV rays, preserving the factory paint underneath.

12. For the past 20 years, XPEL has become an industry leader and a worldwide leading supplier of automotive PPF because of its continued development of high quality and dependable automotive PPF and other automotive paint, headlamp, and window protection films.

13. Much of XPEL's success is largely based on its continued commitment to high-quality dependable products and dedication to delivering tools and services that help ensure proper application of its products for the end user.

14. XPEL works directly with independent installers and new car dealerships in the United States, which includes XPEL protection films, installation training, and access to XPEL's Design Access Program ("**DAP**"). XPEL operates five installation centers in the United States that serve wholesale and retail customers in their respective markets.

15. XPEL has marketed and distributed its products and services under the trademark XPEL. XPEL owns the trademark XPEL, U.S. Reg. No. 3,542,360 (depicted below in Figure 1), registered in International Class 17 on the Principal Register of the Federal Trademark Register of the United States ("**XPEL's Registered Mark**").

**Figure 1**

16. XPEL's Registered Mark was registered on the Principal Register on December 9, 2008 under U.S. Reg. No. 3,542,360 and was first used in commerce at least as early as December 2007. This mark is incontestable, which pursuant to Lanham Act, 15 U.S.C. § 1115, conclusively establishes both XPEL's exclusive right to use this mark in commerce and its validity. A copy of its registration and pertinent assignment record is attached hereto as Exhibit A.

17. XPEL's Registered Mark has been registered for use with "Plastic film for protecting paint and glass; kits containing plastic film for protecting paint and glass."

18. In addition to the goodwill resulting from XPEL's Registered Mark, XPEL owns common law trademark rights and associated goodwill in its XPEL marks based on widespread use of those marks in the after-market automotive and parts industry ("**XPEL's Common-Law Marks**").

19. XPEL's Registered Mark and Common-Law Marks (collectively, the "**XPEL Marks**") are composed and used in such a way that the public associates those marks with XPEL.

20. The XPEL Marks are associated with the high quality of XPEL's products in the after-market automotive and parts industry.

21. XPEL owns and operates its website www.xpel.com ("**XPEL Website**") that advertises and promotes its XPEL branded products worldwide. The XPEL Marks are displayed throughout the XPEL Website, including the use of XPEL's Registered Mark of Figure 1 above on product packaging. Examples of product packaging with XPEL's Registered Mark are shown below in Figures 2, 3 and 4.




**Figure 2**




**Figure 3**




**Figure 4**

**<u>DEFENDANTS' UNLAWFUL CONDUCT</u>**

22. Upon information and belief, Detail Doctor is a PPF installation shop owned and operated by Arlia.

23. Upon information and belief, Arlia Auto Group is a business owned and operated by Arlia, which sells used cars and/or provides vehicle storage services.

24. In and around December 2021, Defendants contacted XPEL seeking to become an Authorized XPEL Dealer to sell and install XPEL film and products. At that time, XPEL discussed the terms and conditions required to operate as an XPEL Authorized Dealer, including the

obligations associated with dealer status, product representation, and compliance with XPEL's program expectations.

25. In and around December 2021, XPEL entered into an agreement with Defendants allowing Defendants to become an Authorized XPEL Dealer conditioned upon Defendants' agreement to exclusively offer XPEL's tints, PPFs, and coatings and refrain from offering tint, PPF or coatings from other providers. On information and belief, Defendants complied with this restriction for several years.

26. In 2025, XPEL discovered that Defendants were using competing film and coating brands, including Ceramic Pro and other non-XPEL products.

27. Therefore, in and around February of 2025, XPEL had a discussion with Defendants about the duties and obligations of an XPEL Authorized Dealer, including the obligations associated with dealer status, product representation, and compliance with XPEL's program expectations including the restriction that an Authorized XPEL Dealer is conditioned upon Defendants' agreement to exclusively offer XPEL's tints, PPFs, and coatings and refrain from offering tint, PPF or coatings from other providers. At that time, Defendants explained to XPEL that Defendants were going through a phase of exploration to see what works best for Defendants. Defendants emphasized that it's nothing personal—strictly business. Defendants mentioned the high cost of the XPEL material and expressed discontent with having to pay for the DAP software. Defendants also, for the first time, expressed concerns about the quality of the XPEL product and claimed that Defendants had experienced issues with installations, both for PPF and coatings. XPEL emphasized the importance of communicating any product issues to XPEL, and to its Sales Managers in particular, since they were there to assist Defendants. XPEL also offered to send a trainer to verify Defendants' concerns and to provide help. While Defendants

acknowledged that they could have reached out to XPEL and its Sales Managers, Defendants admitted that they had never raised these concerns to XPEL before.

28. At that time in and around February 2025, Defendants indicated that they were not willing to exclusively sell and install XPEL products. XPEL informed Defendants that if they did not agree to remain exclusive to XPEL, they would be removed from being an Authorized XPEL Dealer. At that time, Defendants acknowledged that they could not be an Authorized XPEL Dealer because they would not agree to not sell and install exclusively XPEL products.

29. Accordingly, at least as early as February 2025, Defendants were no longer an authorized XPEL Dealer and, therefore, not allowed to hold themselves out as being affiliated with XPEL, nor allowed to use the XPEL Marks. Since that time, Defendants have also not been an authorized provider or vendor of XPEL products.

30. Upon information and belief, Defendants have established and posted numerous photos, articles, and blog posts on the following websites and social media sites:

https://www.detaildoctor.com
https://www.facebook.com/thedetaildoctorny/
https://www.instagram.com/thedetaildoctorny
https://www.youtube.com/c/thedetaildoctor
https://www.tiktok.com/@thedetaildoctor
https://www.instagram.com/arliaautogroup/.

31. In and around June 2026, Defendants commenced and orchestrated a systematic pattern of online disparagement of XPEL. Defendants posted videos and associated text on their social media pages, including by posting such videos and text to Facebook, TikTok, YouTube, and Instagram, whereby Defendants made false and derogatory statements about XPEL and/or XPEL's products. On information and belief, Defendants undertook their disparagement campaign in an effort to usurp XPEL's existing customers and dissuade XPEL's prospective customers from

purchasing XPEL film, which Defendants were no longer allowed to sell.

32. Defendants began posting numerous "Paint Protection Film Review" videos and blog postings on its social media pages, including Facebook, Instagram, YouTube, and TikTok. Defendants supposedly were providing "independent" product reviews of various paint protection film products from various manufacturers, which are direct competitors of XPEL. In these "independent product review" videos, Defendants have made disparaging comments about XPEL and its products.

33. Upon information and belief, Defendants secretly received compensation from third parties in exchange for a favorable review of the competitor product. Attached as **Exhibit B** is a copy of The Detail Doctor's Brand Awareness Proposal through which it offers to provide "the highest level of exposure and allows brands to communicate their message directly to one of the most engaged audiences in the Paint Protection Film industry" (the "**Detail Doctor's Brand Awareness Proposal**").

34. Although the Detail Doctor purports to provide "honest, installer-based evaluations of PPF products," Defendants **failed to disclose** to the public that these "product reviews" or influencer videos **are paid sponsorships** made pursuant to the Detail Doctor's Brand Awareness Proposal and that Defendants were receiving compensation for these supposedly "independent product reviews."

35. Upon information and belief, Defendants have posted these "independent product reviews," in whole or in part, with the intent to interfere with XPEL's business and XPEL's relationship with its Authorized Dealers and customers. In their videos posted on social media, Defendants claimed to have removed XPEL film from vehicle(s) but provided no proof that the film removed from the vehicle was actually XPEL product. Upon information and belief,

Defendants falsely identified the film as an XPEL product.

36. In their videos posted on social media, among other statements, Defendants falsely stated that the alleged XPEL product "degraded and failed" and was a "yellow failed material." Defendants further falsely stated that ". . . XPEL's branding is yellow because its film is yellow" and that "90+ percent of all the paint protection removal jobs are coming from the XPEL brand." In addition, Defendants also falsely stated "XPEL is lying straight to your face" and that "[XPEL's] film is garbage. It has all failed."

37. Upon information and belief, Defendants have also contacted other PPF installation shops, including other former Authorized Dealers of XPEL, and have encouraged other entities to make disparaging comments about XPEL and its products and to encourage such other entities to re-post and comment on the disparaging videos and blog posts identified above. Upon information and belief, Defendants have done so with the intent to interfere with XPEL's business and its relationship with its Authorized Dealers and customers.

38. Additionally, despite no longer being an authorized XPEL Dealer, Defendants continued to display XPEL's trademarks and logos in its service center, including on signage.

39. Even though Defendants were no longer an authorized XPEL Dealer, Defendants' website continued to display images of XPEL's trademarks and logos in connection with Defendants' offering of products and services. Furthermore, Defendants continue to display images of XPEL's trademarks and logos in connection with Defendants' offering of products and services on one or more of Defendants' social media webpages.

40. As an example, Defendants continued to purport to sell and install XPEL's Prime Automotive Window Films on Defendants' website at https://www.detaildoctor.com/window-tinting, an excerpt of which is shown below:


DETAIL DOCTOR
Paint Protection Film Paint Correction Vehicle Cleaning & Detailing
Ceramic Coating Window Tinting Mobile Detailing Other Services
About Us Blog
Contact
WINDOW TINTING
Experience the difference of ceramic window tints
XPEL
PRIME
AUTOMOTIVE WINDOW FILM
XPEL WINDOW TINT FILMS
XPEL window tint films significantly decreases a vehicle's overall cabin temperature. This XPEL window tint films will reduce interior fading and cracking. Tinting enhances appearance and adds privacy. All of our XPEL window tint films block over 99% of damaging UVA UVB and UVC rays which contribute to premature aging. eye damage, and skin cancer. Protect your car today with car window tinting in Westchester, New York.
PRIME XR PLUS
AUTOMOTIVE WINDOW FILM
BEST
This XPEL window tint film offers 98% infrared heat rejection due to the multilayer nanoparticle technology, Prime XR Plus combines the cool look with extreme performance. Prime XR Plus provides SPF 1000 protection that effectively blocks over 99% of harmful UV rays that can lead to numerous skin cancers, premature aging and skin cell damage. Why take chances?
PRIME XR
BETTER
This film offers 88% infrared heat rejection due to the multilayer nanoparticle technology, Prime XR Plus combines the cool look with extreme performance. This XPEL Prime XR Plus provides SPF 1000 protection that effectively blocks over 99% of harmful UV rays that can lead to numerous skin cancers, premature aging and skin cell damage.
PRIME HP
GOOD
This film offers 46% infrared heat rejection due to the hybrid construction with deep dyed polyester and metalized layer to enhance appearance and performance. This XPEL film also does NOT block radio signals. Prime XR Plus combines the cool look with extreme performance. Prime XR Plus provides SPF 1000 protection that effectively blocks over 99% of harmful UV rays that can lead to numerous skin cancers, premature aging and skin cell damage.




(as last accessed on or about June 25 or 26, 2026)

41. Likewise, in Defendants' promotion of their Vehicle Cleaning and Detailing services, Defendants continued to promote the sales and installation of XPEL's FUSION product, as shown below:




(as last accessed August 20, 2026)

42. Defendants also continue to promote XPEL's FUSION product on Defendants'

Instagram page at https://instagram.com/arliaautogroup, an excerpt of which is shown below.




(as last accessed August 24, 2026)

43. Defendants' installation shop and website thereby gave and continues to give consumers the impression that Defendants' products and services are authorized, hosted, or sponsored by XPEL or affiliated with XPEL, when in fact they are not. An example of such is set forth below.




(as last accessed on or about June 25 or 26, 2026)




(as last accessed on or about June 25 or 26, 2026)

44. In addition, upon information and belief, Defendants engage in a “bait and switch” scheme, which deceives consumers by luring them to Defendants’ business under the premise that Defendants’ business is an XPEL certified/authorized dealer and that the consumer will receive an XPEL film, but then substituting third party films, including those of inferior quality, upon

installation.

45. Upon information and belief, Defendants intentionally use the XPEL Marks to pass off third party films as XPEL products and to trade off the goodwill and reputation of XPEL.

46. As indicated above, Defendants were an Authorized Dealer of XPEL and had knowledge of the XPEL Marks no later than 2021. However, in 2025, Defendants ceased being an Authorized Dealer of XPEL and were no longer authorized to use the XPEL marks.

47. XPEL contacted Defendants on July 9, 2026 via a cease and desist letter, a copy of which is attached as Exhibit C, describing the infringement of the XPEL Marks.

48. Since Defendants' receipt of the July 9, 2026 cease and desist letter, Defendants' website continues to promote and insinuate that they are still affiliated with XPEL and an Authorized Dealer of XPEL. For example, Defendants assert that they are "certified" to install XPEL films. *See, e.g.,* https://www.detaildoctor.com/blog/ppf-vs-other-protections-why-its-the-best-choice-for-new-york-drivers ("Brands like XPEL (which we're certified to install) . . . ." as shown below:

**WHAT IS PPF? A QUICK REFRESHER**

Paint Protection Film (PPF) is a thick, transparent urethane layer applied to your car's exterior. Brands like XPEL (which we're certified to install) offer self-healing options that repair minor scratches with heat. It's designed for physical protection against rocks, salt, and scratches, lasting 5-10 years with a 10-year warranty. Now, let's compare it to the alternatives.

(as last accessed August 20, 2026)

49. In addition, since Defendants' receipt of the July 9, 2026 cease and desist letter, Defendants' website continues to display images of XPEL's trademarks and logos in connection with Defendants' offering of products and services, including the following example:




(as last accessed August 20, 2026)

50. Since Defendants' receipt of the July 9, 2026 cease and desist letter, Defendants' website also continues to include the term "XPEL" repeatedly throughout its metadata to ensure Defendants' website is retrieved when a potential consumer searches for Plaintiff's XPEL Marks. *See, e.g.,* Exhibit D.

51. In addition, since Defendants' receipt of the July 9, 2026 cease and desist letter, Defendants' social media pages continue to display images of XPEL's trademarks and logos in connection with Defendants' offering of products and services, including the following examples:




(as last accessed August 28, 2026)




(as last accessed August 28, 2026)

**COUNT I**
**<u>DECEPTIVE TRADE PRACTICES (NEW YORK GENERAL BUSINESS LAW § 349)</u>**

52. XPEL repeats and alleges each and every paragraph set forth above as if fully set forth again here.

53. Upon information and belief, Defendants engage in a "bait and switch" scheme, which deceives consumers, including consumers who reside in New York, by luring them to Defendants' business under the premise that Defendants' business is an XPEL certified/authorized dealer and that the consumer will receive an XPEL film, but then substituting third party films, including those of inferior quality, upon installation. Defendants' conduct constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law and has caused public harm.

54. In addition, Defendants provide supposedly independent product reviews on their website and/or social media sites. Upon information and belief, Defendants secretly receive compensation in exchange for a favorable review, without disclosing to the public, including consumers who reside in New York, Defendants' receipt of such compensation.

55. Defendants' actions and practices are materially misleading and deceptive to ordinary consumers. Defendants' conduct constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law and has caused public harm.

56. Upon information and belief, by their acts, Defendants have made and will continue to make substantial profits to which they are not entitled in law or equity.

57. Upon information and belief, Defendants will continue their deceptive acts and practices, and will continue to willfully deceive consumers, unless restrained by this Court.

58. Defendants' acts have caused actual damage to XPEL. Upon information and belief, Defendants deceptive acts and practices were committed willfully and with the intention of

causing harm to XPEL.

59. Further, Defendants' acts have caused, and will continue to cause, irreparable injury to XPEL, and XPEL has no adequate remedy at law.

**COUNT II**
**FALSE ADVERTISING (NEW YORK BUSINESS LAW § 350)**

60. XPEL repeats and alleges each and every paragraph set forth above as if fully set forth again here.

61. Defendants provide supposedly independent product reviews on their website and/or social media sites. Upon information and belief, Defendants secretly receive compensation in exchange for a favorable review, without disclosing to the public, including consumers who reside in New York, Defendants' receipt of such compensation. Defendants' conduct constitutes deceptive acts and practices in violation of Section 350 of the New York General Business Law and has caused public harm.

62. Upon information and belief, by its acts, Defendants have made and will continue to make substantial profits to which they are not entitled in law or equity.

63. Upon information and belief, Defendants will continue their deceptive acts and practices, and will continue to falsely advertise, unless restrained by this Court.

64. Defendants' acts have caused, and will continue to cause, irreparable injury to XPEL, and XPEL has no adequate remedy at law.

**COUNT III**
**UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, PASSING OFF AND FALSE ADVERTISING UNDER THE LANHAM ACT**

65. XPEL repeats and realleges each and every paragraph set forth above as if fully set forth again here.

66. The XPEL Marks are used by XPEL in connection with providing high quality goods and services and are distinctive marks that have become associated with XPEL and thus exclusively identify XPEL's business, products, and services.

67. Defendants' intentional and wrongful use of the XPEL Marks in connection with Defendants' services is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the products installed by Defendants, and is intended, and is likely to cause such persons to believe in error as to the affiliation, connection, and association of Defendants with XPEL and as to the origin, sponsorship, or approval of the products installed by Defendants, and that misrepresents the nature, characteristics, and qualities of Defendants' services and products used in connection with Defendants' services, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). For example, on information and belief, consumers are deceptively led to believe that Defendants are installing XPEL products, rather than third party products.

68. The foregoing acts and conduct by Defendants constitute false designation of origin, false advertising, passing off, and unfair competition in connection with products and services distributed in interstate commerce, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69. In addition, Defendants' publication of false and misleading statements about XPEL and XPEL's products constitutes false advertising in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants' publication of false and misleading statements about XPEL and XPEL's products are likely to deceive consumers as to the nature and quality of XPEL and its products.

70. Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

71. In addition, Defendants' acts, as set forth above, have caused irreparable injury to XPEL's goodwill and reputation. The injury to XPEL is ongoing and irreparable.

72. Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

73. XPEL is entitled to a permanent injunction against Defendants, as well as all other damages and remedies available under the Lanham Act, statutory or otherwise, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees.

74. An award of monetary damages alone cannot fully compensate XPEL for its injuries and XPEL lacks an adequate remedy at law.

**COUNT IV**
**DEFAMATION**

75. XPEL repeats and alleges each and every paragraph set forth above as if fully set forth again here.

76. Defendants published false statements to consumers and prospective consumers regarding XPEL as described in this Complaint. Namely, in and around June 2026, Defendants commenced creating and publishing videos, often accompanied with copy, to third parties in this district and across the Internet via Defendants' social media pages, including by posting such videos and copy to Facebook, TikTok, YouTube, and Instagram

77. Defendants falsely stated that ". . . XPEL's branding is yellow because its film is yellow" and that "90+ percent of all the paint protection removal jobs are coming from the XPEL brand." In addition, Defendants also falsely stated "XPEL is lying straight to your face" and that

"[XPEL's] film is garbage. It has all failed."

78. Defendants' false statements were injurious to XPEL's business because such statements caused XPEL's consumers and prospective consumers to avoid purchasing products from XPEL.

79. On information and belief, Defendants acted knowingly or recklessly in making the false statements to consumers and prospective consumers, particularly because Defendants were well aware that such statements were false when made as they were privy to XPEL's business practices as a former authorized dealer and had actual knowledge of the quality of XPEL's products in question.

80. Defendants' false statements are not protected by any privilege.

81. Defendants acted with actual malice or with reckless disregard for the truth of the matter contained in Defendants' false statements to XPEL's consumers and prospective consumers.

82. False statements that are directed to the honesty, efficiency, or other business character traits amount to defamation per se.

83. Here, Defendants published statements direct to XPEL's honesty.

84. Additionally, XPEL incurred special harm, including, but not limited to, damage to its relationship with its customers.

85. Whether by defamation per se or by special harm, XPEL has suffered injury as XPEL has lost sales.

86. XPEL has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

**COUNT V**
**UNFAIR COMPETITION UNDER NEW YORK COMMON LAW**

87. XPEL repeats and realleges each and every paragraph set forth above as if fully set forth again here.

88. Defendants have committed trademark infringement and other unlawful acts as set forth above in violation of XPEL's property rights in the XPEL Marks. Upon information and belief, Defendants' acts have resulted and continue to result in the "passing off" of substitute films as those of XPEL, or as somehow related to, associated with, or sponsored, or endorsed by, XPEL. Such acts constitute unfair competition under the common law of the State of New York entitling XPEL to relief.

89. Due to Defendants' conduct, XPEL has suffered irreparable harm, suffered injury-in-fact, and has lost money or property as a result of Defendants' acts of unfair business practices alleged herein. Upon information and belief, Defendants have made and will make substantial profits which they are not entitled under law or equity. It would be difficult to ascertain the amount of money damages that would afford XPEL adequate relief at law for Defendants' acts. Plaintiff's remedy at law is not adequate to compensate it for its injuries.

90. Upon information and belief, Defendants will continue their infringing acts and will continue to unfairly compete with XPEL unless restrained by this Court.

91. Defendants' acts have caused, and will continue to cause, irreparable injury to XPEL, and XPEL has no adequate remedy at law. Accordingly, XPEL is entitled to a permanent injunction against Defendants, as well as all other remedies, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees

## COUNT VI
## UNJUST ENRICHMENT

92. XPEL repeats and alleges each and every paragraph set forth above as if fully set forth again here.

93. Upon information and belief, Defendants have been and will continue to be unjustly enriched as a result of their unauthorized use of the XPEL Marks, as described above, thereby depriving XPEL of revenues it rightfully should receive by virtue of the use of the XPEL Marks.

94. Upon information and belief, by its acts, Defendants have made and will continue to make substantial profits to which they are not entitled in law or equity.

95. Upon information and belief, Defendants will continue their infringing acts and will continue to unjustly enrich themselves, unless restrained by this Court.

96. Defendants' acts have caused, and will continue to cause, irreparable injury to XPEL, and XPEL has no adequate remedy at law.

**COUNT VII**
**<u>TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))</u>**

97. XPEL repeats and realleges each and every paragraph set forth above as if fully set forth again here.

98. Defendants' aforementioned acts constitute trademark infringement in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

99. XPEL holds all right, title, and interest in the XPEL Marks. XPEL's federal registration on the Principal Register for the "XPEL" trademark, U.S. Reg. No. 3,542,360, is incontestable pursuant to the Lanham Act, 15 U.S.C. § 1115. Incontestability is conclusive evidence of its validity, XPEL's ownership of the mark and of XPEL's exclusive right to use the mark in commerce in connections with the goods and services specified in the certification of registration under 15 U.S.C. § 1115(b).

100. XPEL has used and continues to use the XPEL Marks, including in connection with

the goods and/or services set forth in U.S. Reg. No. 3,542,360.

101. XPEL's products are sold throughout the United States through an extensive dealer network, including through the State of New York. Each dealer is granted authorization to use the XPEL Marks in connection with the promotion and sale of XPEL's products.

102. Since at least February 2025, Defendants are no longer an authorized dealer or service provider and are not authorized to use the XPEL Marks in any capacity.

103. Defendants use the XPEL Marks in connection with offering and/or providing services to consumers.

104. Defendants are using the XPEL Marks in a manner that conveys, implies, or indicates that Defendants' services are endorsed, sponsored, or otherwise approved by or affiliated with XPEL.

105. The PPF application and vehicle protection services that Defendants offer are closely related to the goods and/or services contained in XPEL's U.S. Trademark Registration and/or provided under the XPEL Marks.

106. Accordingly, Defendants' unauthorized use of the XPEL Marks to market and sell Defendants' services is likely to cause confusion, or to cause mistake, or to deceive, including, without limitation, by being likely to cause confusion as to sponsorship or authorization by XPEL. Defendants' actions constitute trademark infringement in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

107. Defendants became aware of XPEL's ownership of the XPEL Marks no later than 2021.

108. The foregoing acts of infringement have been and continue to be deliberate, willful, and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

109. Defendants' use of the XPEL Marks will likely continue unless enjoined by this Court.

110. As a proximate result of Defendants' actions, XPEL has suffered and will continue to suffer substantial damage to its business, goodwill, reputation, profits, and the strength of its trademarks. The injury to XPEL is ongoing and irreparable.

111. An award of monetary damages alone cannot fully compensate XPEL for its injuries, and XPEL lacks an adequate remedy at law.

112. XPEL is entitled to a permanent injunction against Defendants, as well as other remedies and damages available under the Lanham Act, statutory or otherwise, including but not limited to, damages sustained by the Plaintiff, treble damages, disgorgement of the Defendants' profits, and costs and attorneys' fees.

**COUNT VIII**
**COMMON LAW TRADEMARK INFRINGEMENT**

113. XPEL repeats and realleges each and every paragraph set forth above as if fully set forth again here.

114. The XPEL Marks are valid trademarks under New York common law.

115. By the acts alleged herein, Defendants are liable for trademark infringement of the XPEL Marks under New York common law.

116. Upon information and belief, by its acts, Defendants have made and will make substantial profits which they are not entitled under law or equity.

117. Upon information and belief, Defendants will continue their infringing acts and will continue to infringe the XPEL Marks, unless restrained by this Court.

118. Defendants' acts, as set forth above, have caused, and will continue to cause, irreparable injury to XPEL and XPEL has no adequate remedy at law.

## REQUEST FOR A JURY TRIAL

119. XPEL requests a jury trial on all issues in this action so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests this Court to enter judgment in favor against Defendants granting the following relief:

A. That Defendants and those persons and entities in concert or participation with Defendants, and their respective affiliates, successors, and assigns along with the directors, officers, agents, servants, and employees thereof be permanently enjoined from:

1. Using any of the XPEL Marks or any mark that is confusingly similar to the XPEL Marks in conjunction with the promotion, marketing, and advertising of Defendants' products and/or services;
2. Passing off or falsely designating the origin of Defendants' products as those of Plaintiff;
3. Doing any other act likely to induce the belief that Defendants' products and/or services are in any way connected with, sponsored , affiliated, licensed, or endorsed by XPEL; and
4. Using any of the XPEL Marks for goods and services, or on the internet or as domain names, email addresses, meta tags, invisible data or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Defendants with XPEL.

B. That Defendants in accordance with 15 U.S.C. § 1116(a), be directed to file with this court and serve upon XPEL within thirty days after service of the permanent injunction a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the permanent injunction;

C. That Defendants be ordered to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, and advertisements in their possession that bear any of the XPEL Marks;

D. That Defendants be ordered to take down the https://www.detaildoctor.com website and the identified social media page(s) unless and until all use of any mark that is confusingly similar to the XPEL Marks is removed;

E. That Defendants be required to pay to Plaintiff such damages, statutory or otherwise, as Plaintiff has sustained in consequence of Defendants' unlawful acts, and to account for and return to Plaintiff any monies, profits, and advantages gained by Defendants;

F. That XPEL recover three times Defendants' profits made as a result of Defendants' wrongful actions or three times XPEL's damages, whichever is greater;

G. That this case be deemed an exceptional case under 15 U.S.C. §§ 1117 and that Defendants be deemed liable for and ordered to reimburse XPEL for its reasonable attorneys' fees;

H. That XPEL be awarded exemplary damages for Defendants' willful and intentional acts;

I. An award of reasonable attorneys' fees and costs for this action;

J. That XPEL recover all prejudgment and post judgment interest as allowed by law; and

K. That XPEL recover such further relief as may be just and proper.

Dated: November 3, 2026

Respectfully submitted,

**SAUL EWING LLP**

1270 Avenue of the Americas, Suite 2800
New York, NY 10020
Telephone:(212) 980-7200
Facsimile: (212) 980-7209
E-Mail: john.basinger@saul.com

By: */s/ John A. Basinger*
John A. Basinger

**DYKEMA GOSSETT PLLC**
J. Daniel Harkins (*pro hac vice* forthcoming)
112 E. Pecan, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395
Email: dharkins@dykema.com

**ATTORNEYS FOR PLAINTIFF XPEL, INC.**

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands trial by jury of all issues so triable.

Dated: November 3, 2026

Respectfully submitted,

**SAUL EWING LLP**

1270 Avenue of the Americas, Suite 2800
New York, NY 10020
Telephone:(212) 980-7200
Facsimile: (212) 980-7209
E-Mail: john.basinger@saul.com

By: *<u>/s/ John A. Basinger</u>*
John A. Basinger

**DYKEMA GOSSETT PLLC**
J. Daniel Harkins (*pro hac vice* forthcoming)
112 E. Pecan, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395
Email: dharkins@dykema.com

**ATTORNEYS FOR PLAINTIFF**
**XPEL, INC.**